## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **I-KIEM SMITH,** | : | **Civil No. 3:11-CV-1581** |
| | : | |
| **Plaintiff,** | : | **( Judge Kosik)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **LT. J. PRICE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

### A.    Procedural History

This litigation has a tangled procedural background, marked by repeated, halting efforts by the plaintiff to comply with Rule 8's guidance that his complaint be a simple, but comprehensive, statement of his claims.

The plaintiff, I-Kiem Smith is a state prisoner, who commenced this civil rights action by filing a civil complaint on August 24, 2011. (Doc. 1.) Smith's initial complaint leveled a battery of allegations against 11 correctional officials and agencies. On November 29, 2011, the defendants responded to this complaint by filing a motion to dismiss some of Smith's claims. (Docs. 18 and 19.) Smith, in turn, reacted to this motion by seeking leave to file an amended complaint, (Doc. 20 and 21), which  was conditionally granted by the district court on December 9, 2011. (Doc.22.)  Smith then filed an amended complaint on December 22, 2011.

This amended complaint was a curious document. Like the original complaint, it listed 11 defendants: Lt.Price, Sgt. Sheetz, correctional officers Cramer, Harper, Kennedy, Harpster and Harrington, Hearing Examiner Mitchell, a Physician Assistant known only as John Doe, and Dr. Dreibelbis the Correctional Health Care Administrator. (Doc. 26.) However, having identified these 11 defendants in the caption of this pleading, the amended complaint then only went on to make factual allegations relating to seven defendants–Lt. Price, Sgt. Sheetz, and correctional officers Cramer, Harper, Kennedy, Harpster and Harrington. (Id.) These factual averments related to what Smith described as an excessive use of force by these staff on February 17, 2011. (Id.) Thus, the amended complaint contained no allegations whatsoever relating to Hearing Examiner Mitchell, Dr. Dreibelbis, a Physician Assistant known only as John Doe, and the Correctional Health Care Administrator.

On January 6, 2012, this case was referred to the undersigned for pre-trial management. (Doc. 31.) Upon a screening review of Smith's amended complaint, we recommended that the amended complaint be dismissed, but without prejudice to allowing the plaintiff one final opportunity to attempt to correct the deficiencies noted in this report and recommendation by filing a second amended complaint. (Doc. 32.) Smith responded to this development by filing a motion for leave to file a supplemental complaint. (Docs. 33 and 34) This supplemental complaint was also a curious document. (Doc. 34-1.) It did not appear to contain any of the legal or factual recitals

that were set forth in either this initial complaint filed by Smith or the plaintiff's first amended complaint. (Id.) Instead, it merely recited other alleged incidents of retaliation by correctional officers, episodes as to which the plaintiff seemed to acknowledge he has not yet fully exhausted his administrative remedies. (Id.)

### B. Smith's Current Complaint

Presented with yet another procedurally flawed pleading, we issued a Report and Recommendation on March 5, 2012, which recommended that Smith be directed to file a single, comprehensive amended complaint in this case. (Doc. 43.) That recommendation was adopted by the district court, (Doc. 46), and on April 13, 2012, Smith filed the amended complaint which is now at issue in this case. (Doc. 48.) This amended complaint named twenty defendants, and recited a catalogue of claims spanning a one year period from February 2011, through February 2012. (Id.)

This recital began on February 17, 2011, when Smith alleges that eight correctional[1] staff used excessive force against him in the prison recreation yard, beating Smith in retaliation for his past practice of filing grievances against staff. (Id., ¶¶7-19.) As a result of this beating by staff, Smith claims that he suffered injuries to his nose, face, eyes, and wrists. (Id.)

---

[1] These defendants include Lt. Price, Sgt. Sheetz, and correctional officers Cramer, Sheetz, Harper, Kennedy, Harpster and Harrington.

In the days immediately following this incident, on February 18 and 23, 2011, Smith contended that an unidentified physician assistant came to Smith's cell and promised the plaintiff that his wounds would be examined and x-rayed. (Id., ¶¶20-22.) Despite these promises, Smith contended that he received no medical treatment until March 8, 2011, at which time his bruising and injuries had largely subsided. (Id.)

According to Smith, this February 17, 2011 incident also led to two disciplinary citations filed against him by defendant Harper. (Id., ¶¶23-26.) Smith claims that these citations were "fabricated" by Harper. (Id.) These citations alleged that Smith assaulted staff on February 17, a claim that Smith denies. (Id.) These disciplinary matters were heard by Hearing Examiner Mitchell in March 2011, and Smith's complaint alleges that Mitchell was biased, and violated Smith's due process rights by denying Smith the opportunity to call witnesses and receive other, unspecified assistance. (Id.) At the conclusion of these proceedings, Mitchell found Smith guilty of these disciplinary infractions. (Id.) While Smith's complaint does not clearly state what sanctions were imposed in this matter, the parties all seem to concede in their pleadings that the sanction imposed upon Smith consisted of an additional period of confinement in the prison's Restricted Housing Unit.

According to Smith four months then elapsed without incident, until July 8, 2011, when Smith asserted that he observed a correctional defendant, Lt. Lear, threaten an inmate who had been a witness to the February 17, 2011 recreation yard incident

between Smith and staff. (Id., ¶¶27-29.) Smith provided this inmate with a declaration attesting to the alleged threats that Smith witnessed, and six weeks later, on August 20, 2011, Smith contends that Lt. Lear retaliated against him by filing a false misconduct report against Smith. (Id.) While he described the report as "false" Smith provided no information regarding the outcome of this disciplinary action. (Id.)

In Smith's narrative, five weeks then passed without incident, until September 29, 2011, when the prison superintendent, defendant Fisher, ordered a search of the entire housing unit where Smith resided. In the course of this housing unit search Smith contended that five prison staff–defendants Lear, Wertz, Cloar, Vogt and Ashley– confiscated or destroyed some of his personal property and legal materials, including photos, magazines and books. (Id., ¶¶30-37.)

In Smith's factual recital two months then passed without any further incident or complaint. Then, on December 14, 2011, defendant Lear confiscated an incoming letter addressed to Smith, providing Smith with notice of this confiscation in accordance with prison policies. (Id., ¶37.) The following day, December 15, 2011, defendant Eichenlaub ordered a search of Smith's cell, a search which resulted in the seizure of various papers and "one bar of Irish Spring soap." (Id., ¶38-39.)

Two more months then passed without incident according to Smith, until February 3, 2012, when defendant Eichenlaub authorized another cell search of

Smith's cell by correctional officer Hazlett and Clapper, a search which resulted in the seizure of various magazines, drawings, and other papers. (Id., ¶¶40-41.)

On the basis of these allegations of sporadic, episodic disputes with staff, Smith alleges that correctional staff used excessive force against him on February 17, 2011; displayed deliberate indifference to his medical needs from February 18, 2011 through March 8, 2011; retaliated against him by filing false misconduct reports in March, 2011; violated his due process rights during the March 2011 disciplinary proceedings, which apparently resulted in an additional RHU placement for this prisoner; lodged a false disciplinary report against him in August of 2011 in retaliation for his past conduct; and conducted unlawful and retaliatory cell searches of Smith's cell in September and December of 2011, as well as in February of 2012. (Id.)

The defendants have now moved to dismiss all of these claims, except for Smith's excessive force claims arising out of the February 17, 2011 incident, arguing that Smith's latest amended complaint still fails to state a claim upon which relief may be granted. (Doc. 50.) The parties have fully briefed this motion, (Docs. 52,54, 55), and this matter is now ripe for resolution.

For the reasons set forth below, it is recommended that this motion to dismiss be granted, in part, and denied in part.

## II.  Discussion

## A.    Rule 12(b)(6)– The Legal Standard.

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the

light most favorable to the plaintiff.  Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather,

in conducting a review of the adequacy of complaint, the Supreme Court has advised

trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.


Thus, following Twombly and Iqbal a well-pleaded complaint must contain

more than mere legal labels and conclusions. Rather, a complaint must recite factual

allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of

mere speculation. As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-

step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead

to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

**B.** **Smith's Amended Complaint Fails to State Any Claims Against The Following Supervisory Defendants: Captain Grove, Dr. Dreibelbis, Superintendent Fisher, and Lt. Eichenlaub**

At the outset, despite repeated efforts and the filing of multiple amended complaints, Smith's latest amended complaint is fundamentally flawed in that it names four supervisory defendants in its caption–Captain Grove, Dr. Dreibelbis, the Correctional Health Care Administrator, Superintendent Fisher and Lt. Eichenlaub–but fails to makes sufficient allegations against these defendants to justify supervisory correctional liability. Indeed, with respect to Captain Grove and Dr. Dreibelbis, this amended complaint is wholly bereft of any factual allegations regarding direct misconduct by either of these defendants.

This is a fatal flaw in this pleading since it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was government supervisor or official when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to government officials it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior.* Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

> As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.* . . . <u>See Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); <u>see also Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); <u>Robertson v. Sichel</u>, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. <u>O'Connell v. Sobina</u>, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); <u>Neuburger v. Thompson</u>, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004). Rather,

"[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006).

Here, at the outset, Smith merely listed defendants Grove and Dreibelbis in the caption of the complaint, without setting forth any factual basis for a claim against them in the body of this pleading. Without the inclusion of some further well-pleaded factual allegations, the assertions made here simply fail to meet the threshold defined by law since they do not even rise to the level of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Ashcroft v. Iqbal, supra 556 U.S. at 678. Indeed, this style of pleading, which merely lists parties as defendants without any supporting factual averments whatsoever, has been held to be plainly inadequate to state a civil rights claim against a government official. See Hudson v. City of McKeesport,241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.) Therefore, the complete failure of the amended complaint to include any factual averments regarding the alleged conduct of these defendants is a fatal flaw and compels dismissal of these defendants from this action.

As for Superintendent Fisher and Lt. Eichenlaub, Smith simply alleges that these supervisors authorized cell searches in September 2011, December 2011, and February

2012. This bare allegation does not state a constitutional infraction, since prison officials are entitled to search inmate cells and prisoners like Smith have no constitutionally protected expectation of privacy in their prison cells. See, Hudson v. Palmer, 468 U.S. 517, 529(1984). Furthermore, to the extent that Smith complains about the manner in which his cell was searched on these occasions, there is no indication that these supervisory defendants participated in the searches or acquiesced in the manner in which the cell searches were conducted. Moreover, all parties concede that Smith had post-deprivation remedies available to him to protest any loss or damage to property resulting from these searches, a fact which fully addresses any constitutional concerns arising out of these searches. See Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008). Finally, as we discuss below, Smith has not alleged well-pleaded facts which would permit an inference that these cell searches were conducted in retaliation for incidents involving other staff which occurred months earlier at this institution. Therefore, Smith has failed to allege facts which would give rise to supervisory civil liability for these prison supervisors as a result of these cell searches, and his claims against defendants Fisher and Eichenlaub should also be dismissed.

### C. Smith's Due Process Claim Against Hearing Examiner Mitchell Fails

Smith's complaint also contains what we will liberally construe as a due process violation claim against a disciplinary hearing examiner at the prison, defendant

Mitchell. With respect to this claim, the pertinent facts can be simply stated: Following this February 17, 2011, scuffle between Smith and staff Smith was cited with assaulting staff, a claim that Smith denies. These disciplinary matters were heard by Hearing Examiner Mitchell in March 2011, and Smith was found guilty of these disciplinary infractions. While Smith's complaint does not clearly state what sanctions were imposed in this matter by Mitchell, the parties all seem to concede in their pleadings that the sanction imposed upon Smith consisted of a period of additional confinement in the prison's Restricted Housing Unit. Smith's complaint alleges that Mitchell was biased, and violated Smith's due process rights by denying Smith the opportunity to call witnesses and receive other, unspecified assistance. However, Smith's due process claims against defendant Mitchell stem from an erroneous legal premise, that his placement in disciplinary segregation implicates a sufficient legal interest to trigger specific due process protections.

In analyzing any procedural due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000) (citing <u>Fuentes v. Shevin</u>, 407 U.S. 67 (1972)). Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. <u>Id.</u> (citing <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972)). Protected liberty or property interests generally

arise either from the Due Process Clause or from some specific state-created statutory entitlement. See Board of Regents v. Roth, 408 U.S. 564, 575 (1972). However, in the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and therefore do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). Therefore, as a threshold matter, to the extent that he advances a due process argument, Smith has not articulated a sufficient liberty interest

to trigger a valid due process claim in this prison setting, and his due process claims against defendant Mitchell fail.

### D.    Smith's Other Prison Discipline Retaliation Claims Require Consideration of Matters Outside the Pleadings

Smith makes a second related, retaliation claim against two correctional officers, defendants Harper and Lear, alleging that they submitted false misconduct reports against him in March and September 2011, in retaliation for his past grievances and support of other inmate grievances. In bringing constitutional claims against correctional officers arising out of these prison disciplinary hearings, Smith faces an exacting burden of proof. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56

(1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986). Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was

false, standing alone, does not state a valid cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles also directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights by filing a false misconduct report must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). While filing false misconduct reports may constitute

the type of action that will, in certain cases, support a retaliation claim, <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . <u>See Henderson v. Baird</u>, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." <u>Nifas v. Beard</u>, 374 F.App'x 241, 244  (3d Cir. 2010).

Yet, while these claims are judged against exacting legal standards, resolution of prison disciplinary claims often entails an examination of matters outside the pleadings relating to the disciplinary hearings themselves. Indeed, such consideration of matters outside the pleadings is often essential to a determination of whether "some evidence" supported the disciplinary citation, a determination that is the keystone to analysis of constitutional claims in this setting. For this reason in many instances courts have resolved these questions as a matter of law on summary judgment motions, where the court may consider undisputed material facts beyond the pleadings themselves. <u>See Nifas v. Beard</u>, 374 F.App'x 241, 244  (3d Cir. 2010).

These controlling legal principles guide the resolution of this particular motion to dismiss. In this motion, the defendants suggest that these retaliation claims arising

out of the March and September 2011 disciplinary matters fail because there was "some evidence" to support the disciplinary citations issued here. While the defendants may ultimately be correct in this regard, this motion invites us to consider factual matters outside the pleadings, factual matters which are not presently before the court. At this stage of these proceedings, an assessment of the nature, extent and quality of the evidence supporting these disciplinary citations is not possible. Rather, this assessment would entail a consideration of facts beyond the pleadings, something which can only be done in a properly documented motion for summary judgment and must await another day. Therefore, at this stage, where we are limited to an assessment of the pleadings themselves, we must deny this motion to dismiss without prejudice to the filing of a properly documented summary judgement motion addressing this claim. See Nifas v. Beard, 374 F.App'x 241, 244 (3d Cir. 2010)(affirming summary judgment dismissal of prison discipline retaliation claim). Accordingly, for these reasons, the motion to dismiss these claims should be denied, without prejudice to renewal of this defense through a properly documented summary judgment motion.

### E.     Smith's Access-to-Courts and Property Confiscation Claims Fail

In his complaint Smith also protests the manner in which cell searches were conducted in his cell in September and December of 2011, as well as in February of 2012. Liberally construed, Smith's complaint makes three core claims in this regard,

alleging that this activity was an unlawful search, deprived him of property without due process, and unconstitutionally interfered with his right of access to the courts.

These claims are unavailing. At the outset, to the extent that the plaintiff is attempting to advance a Fourth Amendment claim in this prison setting arising out of these searches, it is clear that this claim fails as a matter of law. While the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV, in order to give force to this guarantee, government officials are limited to conducting searches that are reasonable. Delaware v. Prouse, 440 U.S. 648, 653-54 (1979); Florence v. Bd. of Chosen Freeholders of Burlington, 621 F.3d 296, 301 (3d Cir. 2010). As the Third Circuit has explained:

> Reasonableness under the Fourth Amendment is a flexible standard, Bodine v. Warwick, 72 F.3d 393, 398 (3d Cir. 1995), "not capable of precise definition or mechanical application, Bell [v. Wolfish, 441 U.S. 520, 559 (1979)]. "In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Id.

Florence, 621 F.3d at 301.

In Hudson v. Palmer, 468 U.S. 517, 529 (1984), and Block v. Rutherford, 468 U.S. 576 (1984) the Supreme Court directly addressed this issue in a custodial setting and unequivocally foreclosed Plaintiff's claims relating to the searches of his cell. In Block and Hudson the Supreme Court flatly held that the search of a cell by prison

officials does not violate the Fourth Amendment. As the United States Court of

Appeals for the Third Circuit has explained:

> The defendants correctly assert that prisoners do not have a Fourth
> Amendment right to privacy in their cells. Hudson v. Palmer, 468 U.S.
> 517, 529, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). The Supreme Court
> has concluded that the Fourth Amendment right to privacy, to be free
> from unreasonable searches, is fundamentally inconsistent with
> incarceration. Id. at 527. Mindful that internal security is a chief concern
> in prisons, the Court recognized that it would be impossible to prevent the
> introduction of weapons, drugs and other contraband into the premises if
> prisoners maintained a right of privacy in their cells. Id. Therefore, "the
> Fourth Amendment has no applicability to a prison cell."

Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001).

Thus, it is beyond argument that the plaintiff did not enjoy a privacy right in his prison

cell. For these reasons, Plaintiff's Fourth Amendment constitutional claims regarding

the search of this cell lack any legal merit.

Moreover, inmate due process claims arising out of the confiscation of property

are judged against settled legal standards, standards which recognize that:

> Like other constitutional rights, the Due Process rights of prisoners may
> be accommodated to a prison's legitimate security needs. See Bell v.
> Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
> [Therefore] "[A]n unauthorized intentional deprivation of property" by
> prison officials does not violate the Due Process Clause "if a meaningful
> postdeprivation remedy for the loss is available." Hudson v. Palmer, 468
> U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v.
> Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-
> deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are two crucial component to any inmate due process claim in this setting: (1) the confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy. In this case Smith cannot contend that he had no post-deprivation remedy since Department of Corrections rules provide for just such a remedy, and Smith acknowledges the existence of this remedy, while complaining about how prison officials exercise their discretion in passing on such property loss claims. Smith, is not entitled, however, to compel the federal courts to engage in proceedings to determine the value of lost property like bars of deodorant soap when an adequate administrative post-deprivation remedy exists within the prison system. Therefore, this claim fails on its merits.

Smith's prospects on this particular claim do not improve if it is cast as an access to courts claim since Smith cannot show that he was denied access to the courts in a fashion which offends the Constitution. Smith's complaint calls upon us to consider the contours of the constitutional right of access to the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the

preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in <u>Lewis v. Carey</u>, 518 U.S. 343 (1996). In <u>Lewis</u>, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the Court observed:

> Because <u>Bounds</u> did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense. . . . Insofar as the right vindicated by <u>Bounds</u> is concerned, "meaningful access to the courts is the touchstone," <u>id.</u>, at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which <u>Bounds</u> relied, <u>see id.</u>, at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. <u>Id.</u>, at 832, 97 S.Ct., at 1500.

<u>Lewis v. Casey</u>, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u>, courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. <u>See, e.g., Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir.

1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). A necessary corollary to this principle is that, in order to prevail on an access to the courts claim, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim." <u>Christopher v. Harbury</u>, 536 U.S. 403, 415 (2002). Thus:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an "actual injury"-that they lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit. <u>See Christopher v. Harbury</u>, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." <u>See id.</u> at 416-17, 122 S.Ct. 2179.

<u>Monroe v. Beard</u>, 536 F.3d 198, 205-06 (3d Cir. 2008)

These legal tenets control here, and are fatal to Smith's access to the courts claim for at least two reasons. First, to make such a claim Smith "must describe the underlying arguable [legal] claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " <u>Monroe v. Beard</u>, 536 F.3d 198, 206 (3d Cir. 2008). Here, Smith's complaint identifies no lost legal claims or remedies, essential prerequisites to a constitutional tort in this setting. Further, Smith simply has not shown actual concrete prejudice to him in the litigation of a particular case, the essential prerequisite to a constitutional claim in this setting. Quite the contrary, the record affirmatively reveals that Smith has been an active, indeed a prolific litigator,

who has filed numerous pleadings without any apparent delay or outside impediment. Since it appears that Smith has enjoyed full and untrammeled access to the courts, he cannot demonstrate success on the merits of this particular constitutional claim.

Smith further alleges that defendant Lear confiscated a single piece of incoming mail addressed to him on December 14, 2011, providing Smith with notice of this confiscation and an opportunity to protest the seizure of this one item of mail. With respect to such claims as they pertain to incoming inmate mail, Smith should understand that prison regulations governing receipt of mail are valid if they are:

> reasonably related to legitimate penological interests. To reach this determination, [the United States Supreme Court in] Turner [v. Safley] prescribes a four-part test. We must consider: (1) whether there is a valid, rational connection between the prison regulation and a legitimate governmental interest; (2) whether alternative means of exercising the right in question remain open to inmates; (3) the impact accommodation of the asserted prisoner right will have on the prison generally; and (4) whether there is an absence of ready alternatives. Turner, 482 U.S. at 89-90, 107 S.Ct. 2254.

Nasir v. Morgan, 350 F.3d 366, 371-72 (3d Cir. 2003).

As for outgoing inmate mail: "The applicable test from [Procunier v.] Martinez has two elements: (1) that the regulation must further an important or substantial government interest unrelated to the suppression of expression; and (2) that the regulation be no greater than necessary for the protection of that interest. Martinez, 416 U.S. at 413, 94 S.Ct. 1800." Nasir v. Morgan, 350 F.3d 366, 374 (3d Cir. 2003). Thus, Smith cannot assert some broad challenge to prison mail handling policies. Quite the contrary, consistent with the First Amendment, it is clear that prison officials can,

should and must in some instances briefly detain specific items of mail in accordance with these constitutionally valid Department of Corrections policies governing inmate mail. See, e.g., Robinson v. Department of Corrections, 327 F. App'x 321 (3d Cir. 2009); Nasir v. Morgan, 350 F.3d 366, 371-72 (3d Cir. 2003). Moreover, the facts alleged by Smith–which appear to entail a single interception of one item of mail, with notice to Smith, who was thus given an opportunity to grieve the confiscation of this mail–simply do not state a constitutional infraction. Indeed, the United States Court of Appeals for the Third Circuit has expressly rejected similar claims, holding that inmate civil rights are not implicated in isolated instances where "the mailing or delivery of [prisoner] legal mail was delayed for a few days," Blanchard v. Fed. Bureau of Prisons, 428 F. App'x 128, 130 (3d Cir. 2011), and approving the periodic interception of specific items of incoming inmate mail under Department of Corrections policies. Nasir v. Morgan, 350 F.3d 366, 371-72 (3d Cir. 2003)(confiscation of 8 pieces of mail pursuant to correctiosn policy). This claim, therefore, should also be dismissed.

F.   **These Cell Searches, Which Are Separated By Months From Smith's Constitutionally Protected Activities Will Not Circumstantially Support Retaliation Claims**

Liberally construed, Smith's complaint also seems to allege that the September and December 2011, and February 2012 cell searches conducted by prison staff were undertaken in retaliation for Smith's prior conduct in February 2011, protesting the activities of other prison officials. As pleaded, Smith's retaliation claim rests on circumstantial evidence, with Smith asserting that the timing and chronology of these

events are circumstantial proof of this retaliation. Smith faces a demanding burden of proof in attempting to allege such a retaliation claim based solely upon circumstantial proof.  Inmates like Smith frequently invite courts to infer retaliatory motives from prison decisions and policies. Yet, these invitations, while frequently made, are rarely embraced by the courts. Compare  DeFranco  v. Wolfe, 387 F. App'x 147 (3d Cir. 2010)(denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); Alexander v. Fitch, No. 07-1732, 2010 WL 1257709 (W.D. Pa. March 26, 2010)(same); Carpenter v. Kloptoski, No. 08-2233, 2010 WL 891825 (M.D. Pa. March 10, 2010)(same); Solan v. Ranck, No. 06-49, 2007 WL 141918 (M.D.Pa. Jan. 18, 2007)(denying retaliation claim, in part); with Curtician v. Kessler, No. 07-286, 2009 WL 2448106 (W.D. Pa. Aug. 7, 2009)(factual issues preclude dismissal of inmate cell transfer retaliation claim).

Rather, a prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

The third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component to a constitutional retaliation claim, causation, Smith must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by

their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only

> when accompanied by other evidence of . . . wrongdoing, <u>Shellenberger</u>
> <u>v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 189 (3d Cir.2003). This suggests
> that the temporal proximity must be measured in days, rather than in
> weeks or months, to suggest causation without corroborative evidence.

<u>Conklin v. Warrington Tp.</u>, No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30,2009)

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. See <u>Killen v. N.W. Human Servs., Inc.</u>, No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); <u>see also</u> <u>Farrell</u>, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); <u>Smith v. ABF Freight Sys., Inc.</u>, No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); <u>Mar v. City of McKeesport</u>, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." <u>Fischer v. Transue</u>, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).

In practice, application of these legal tenets has often led to the rejection of retaliation claims as legally insufficient when those claims are like the retaliation assertion made here: An assertion of retaliation based solely on circumstantial proof of some temporal link between the plaintiff's conduct and the defendants' actions when the evidence shows that these events were separated by a significant temporal gulf. See, e.g., DeFranco v. Wolfe, 387 F. App'x 147 (3d Cir. 2010)(denying inmate cell transfer retaliation claim, two months temporal proximity insufficient); Bailey v. Commercial National Insurance Co., 267 F. App'x, 167 (3d Cir. 2008)(employment discrimination-retaliation case, four months temporal proximity insufficient); Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir.1992) (4-month period insufficient); Conklin v. Warrington Tp., No. 06-2245, 2009 WL 1227950 (M.D.Pa. April 30, 2009)(two months temporal proximity insufficient); Rogers v. Delaware, Dept. of Public Safety/DMV 541 F.Supp.2d 623, 627 (D.Del. 2008)(10 months insufficient);Brown v. Boeing, 468 F.Supp.2d 729 (E.D.Pa. 2007)(3-4 months insufficient); Lumban-Tobing v. Potter, No. 04-979, 2005 WL 2100691 (M.D. Pa. Aug. 30, 2005)(9 months insufficient temporal proximity, but other proof creates factual issue precluding summary judgment).

Finally, if a plaintiff discharges his obligation to satisfy this three-part *prima facie* test, the burden then shifts to the defendant to prove by a preponderance of the evidence that he or she would have made the same decision absent the protected

conduct for reasons reasonably related to penological interest. <u>Carter</u>, 292 F.3d at 158. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Rauser</u>, 241 F.3d at 334.

Recognizing the exacting legal standards which apply to this type of retaliation claim, we find that Smith's claims, as pleaded, are not sufficient to state a claim upon which relief may be granted. In this regard, we note that Smith's pleadings consistently display a preternatural, global, subjective sensitivity to alleged retaliation, with Smith ascribing some retaliatory motive to virtually every action that occurs at the prison. However, this heightened subjective sensitivity is not sufficient to state a claim and the events described by Smith in terms of the cell searches are remote in time from Smith's self-described constitutionally protected activities, with these various events separated by as much as one year. Furthermore, in virtually every instance the participants in these searches differ from the defendants named in connection with the first event described by Smith, his February 17, 2011 affray with correctional staff. Moreover, according to Smith, at least one of these searches, the September 2011 cell search, was a search conducted of the entire housing unit where Smith resided, a fact pleaded by Smith which further undermines any inference that this search represented some form of specifically targeted retaliation against the plaintiff.

In short, these various events are separated in time from one another by months; entail disparate acts by different actors; and in some instances involve correctional activities that are in no way specifically directed at Smith but rather affected the entire prison housing unit. Given that this court has rejected far more specific and compelling inmate retaliation claims as too remote in time, See, DeFranco v. Wolfe, 387 F. App'x 147 (3d Cir. 2010)(denying inmate Z-code cell transfer retaliation claim, two months temporal proximity insufficient), we find that Smith's circumstantially pled retaliation claims arising out of these cell searches fail as a matter of law and should be dismissed.

F. **Smith's Deliberate Indifference Medical Claim Against an Unidentified Physician Assistant Cannot Be Resolved Solely on the Pleadings**

Finally, liberally construed, Smith's complaint levels an Eighth Amendment claim of deliberate indifference to serious medical needs against an unidentified physician assistant. With respect to this claim, Smith alleges that the physician assistant saw the plaintiff twice in the immediate aftermath of Smith's affray with correctional staff on February 17, 2011, meeting briefly with Smith on February 18 and 23, 2011. According to Smith, the unidentified physician assistant came to Smith's cell and promised the plaintiff that he wounds would be examined and x-rayed. Despite these promises, Smith contends that he received no medical treatment until March 8, 2011, at which time his bruising and injuries had largely subsided.

Liberally construed, the gravamen of Smith's claim against this defendant is that this prison official violated Smith's rights under the Eighth Amendment to the United

States Constitution by displaying "deliberate indifference" to this inmate's medical needs. Smith faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Barndt must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' Farmer v. Brennan, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk

to inmate health or safety.' Id . at 837." Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Smith is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth

Amendment claim because medical malpractice standing alone is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390

(3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted). In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

In this case, liberally construed, we find that Smith has alleged that treatment of his injuries was delayed by the unnamed physician assistant for approximately two weeks, without any apparent medical justification. Since deliberate indifference may be evidenced by delayed provision of medical treatment for non-medical reasons, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993) we find that these factual recitals are sufficient to state a colorable Eighth Amendment claim against this defendant. Therefore, on the face of the pleadings, Smith has alleged sufficient well-pleaded facts to proceed with the litigation of this claim, and the motion to dismiss this particular defendant at the outset of this litigation should be denied. See, Henry v. Wilson, No. 06-1439, 131164 (W.D. Pa. Jan. 9, 2008) (denying Rule 12(b)(6) motion relating to Eighth Amendment deliberate indifference claim); Thomas v. Arias, No. 06-291, 2007 WL 210097 (E.D. Pa. Jan. 23, 2007)(same).

In reaching this conclusion we are mindful of the fact that, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate and that medically-based Eighth Amendment claims typically fail when an inmate has received on-going care since the exercise by a doctor of his professional judgment is never deliberate indifference. We also recognize that Smith's pleadings suggest that he has received some form of treatment from this defendant while in prison. However, at this stage of these proceedings, an assessment of the nature, extent and quality of that care is not possible. Rather, this assessment would entail a consideration of facts beyond the pleadings, something which can only be done in a properly documented motion for summary judgment and must await another day. Accordingly, for these reasons, it is recommended that the motion to dismiss be denied with respect to this Eighth Amendment deliberate indifference claim.

## G.     <u>The Deficient Claims in This Amended Complaint Should Be Dismissed With Prejudice</u>

Having conducted this analysis and determined that this amended complaint is still wanting in a number of respects, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, <u>See</u> <u>Fletcher-Hardee Corp. v. Pote Concrete Contractors</u>, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir.

2004). In this case the Court has previously provided the plaintiff with ample opportunities to amend these pleadings, but to no avail. The current amended complaint still fails to state a viable civil rights cause of action against a number of these defendants, and actually repeats assertions that were previously found to be legally insufficient. Since the plaintiff has been afforded opportunities to correct the deficiencies identified in his prior complaints with respect to these particular claims and defendants, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the amended complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore as to these defendants and with respect to those claims identified in the Report and Recommendation as deficient, it is recommended that the amended complaint be dismissed without further leave to amend.

### III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants' Motion to Dismiss be GRANTED in part and DENIED in part as follows:

1.  Supervisory defendants Fisher, Grove Dreibelbis and Eichenlaub should be dismissed.

2.  The due process claim against Hearing Examiner Mitchell should be dismissed, and defendant Mitchell should be dismissed from this action.

3.      All claims against defendants Lear Wertz, Cloar, Vogt, Ashley, Hazlett
and Clapper arising out of cell searches in September and December
2011, and February, 2012 should be dismissed.

The motion to dismiss the prison discipline retaliation claims against defendants

Harper and Lear, should be DENIED without prejudice to the filing of a properly

documented summary judgment motion, and the motion to dismiss the Eighth

Amendment deliberate indifference claim against defendant Physician Assistant John

Doe should be DENIED without prejudice to the filing of a properly documented

summary judgment motion.[2]

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
> of a prisoner case or a habeas corpus petition within fourteen (14) days
> after being served with a copy thereof. Such party shall file with the clerk
> of court, and serve on the magistrate judge and all parties, written
> objections which shall specifically identify the portions of the proposed
> findings, recommendations or report to which objection is made and the
> basis for such objections. The briefing requirements set forth in Local
> Rule 72.2 shall apply. A judge shall make a de novo determination of
> those portions of the report or specified  proposed findings or
> recommendations to which objection is made and may accept, reject, or
> modify, in whole or in part, the findings or recommendations made by the
> magistrate judge. The judge, however, need conduct a new hearing only

---

[2]Smith's February 17, 2011 excessive force and retaliation claims against Lt.
Price, Sgt. Sheetz, and correctional officers Cramer, Sheetz, Harper, Kennedy,
Harpster and Harrington, which were not the subject of the instant motion, would
also remain pending and unaffected by this Report and Recommendation

in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of November, 2012.

                                        *S/Martin C. Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge