IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| I-KIEM SMITH, | : | Civil No. 3:11-CV-1581 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| JON FISHER, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION AND ORDER**

I. **Statement of Facts and of the Case**

This case is a civil rights action brought by a state prisoner, I-Kiem Smith. After resolution of the Motion to Dismiss, the following claims remain in this case: a February 17, 2011, excessive force and retaliation claim against Lt. Price, Sgt. Sheetz, and correctional officers Cramer, Sheetz, Harper, Kennedy, Harpster and Harrington; retaliatory disciplinary claims against Officers Harper and Lear arising out of misconducts that were issued on March 26, 2011, and August 20, 2011; and an Eighth Amendment medical claim against the unnamed Physician Assistant.

This matter now comes before the Court on two motions to compel discovery filed by Smith. (Docs. 75 and 87.) Those motions seek discovery of two additional matters. First, Smith requests disclosure of all disciplinary reports relating to the correctional officers named in this complaint. In addition, Smith demands a further

response to a prolix and confusing discovery demand made by the plaintiff, which requested the following information:

> **3. According to Defendants, Price, Sheetz, Harper, Kennedy, Harpster, and Herrington responses to Plaintiff's second set of interrogatories number 4, and that they have witnessed on many occasions while working in the RHU, inmate's slip/come out/push off their handcuffs which would warrant "uses of unplanned force" which inmates would incur misconduct reports and officers would have to submit DC-121 Part 3 Pa. DOC employee reports of incident, Plaintiff requests Defendants to produce misconduct reports DC-141 of inmates slip/come out/push off their handcuffs and corresponding employee reports of incident for timeframe/dates February 17, 2011-February 2005 proving their contentions that they've witnessed inmates slip/come out/push off their handcuffs in the RHU**

The defendants have opposed these requests, (Doc. 90.), and this matter is ripe for resolution.

For the reasons set forth below, Smith's motions will be DENIED, in part, and GRANTED, in part as follows:

## II. Discussion

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, Rule 37 of the Federal Rules of Civil Procedure governs motions for sanctions, and provides that:

> **(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**
> **(1)** *Failure to Disclose or Supplement.* If a party fails to provide

2

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

**(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

**(B)** may inform the jury of the party's failure; and

**(C)** may impose other appropriate sanctions . . . .

Fed. R. Civ. P. 37(c).

The scope of what type of discovery may be compelled under Rule 37, and give rise to sanctions, is defined, in turn, by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999)

> (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving under Rule 37 to compel discovery, or for sanctions, bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such

5

marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

At the outset, to the extent that Smith invites us to find that the defendants have failed to adequately respond to his prolix and confusing interrogatory No. 3, we will decline this invitation. This request is, in our view, confusing, unclear, prolix, and propounded in an argumentative fashion. Given the flaws in this discovery request, we find the defendants' responses to these requests to have been reasonable and appropriate. Accordingly, we will decline the invitation to compel further replies to this request.

We also find that Smith's request for access to the personnel files of the defendants is overly broad. Government employees do not forfeit their personal privacy in personnel records when sued. Quite the contrary, courts have long recognized that:

> Although personnel files are discoverable, they contain confidential information and discovery of them should be limited. See, e.g., Reagan-Touhy v. Walgreen Co., 526 F.3d 641, 648 (10th Cir.2008) ("Personnel files often contain sensitive personal information ... and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly.... This is not to say personnel files are categorically out-of-bounds."); Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D.Pa.1994) ("[P]ersonnel files are confidential and discovery should be limited."). The Court must weigh the right to relevant discovery against the privacy interest of non-parties. The Court finds

> that Plaintiff is not entitled to the entire personnel records of all the individuals without a more particularized showing of relevance

Harris v. Harley-Davidson Motor Co. Operations, Inc, No. 09-1449, 2010 WL 4683776, *5 (M.D.Pa Nov. 10, 2010). Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994)("personnel files are confidential and discovery should be limited.").

Here, given the confidentiality which attaches to personnel records, Smith's request is overly broad because, as the defendants note, " it is not confined to disciplinary information similar to plaintiff claims." (Doc. 90, p. 3.) This defense response, however, aptly concedes that disciplinary citations for conduct similar to that alleged in the complaint might be discoverable. Recognizing this fact, we note that in the past courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to prison records, see Paluch v. Dawson, No. 06-1751, 2007 WL 4375937, *4-5 (M.D. Pa. Dec. 12, 2007), while conducting an *in camera* review of those records which may be relevant to more narrowly tailored discovery demands. Paluch v. Dawson, No. 06-175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will adopt here. We will direct the defendants to provide to the Court for its *in camera* inspection on or before **September 30, 2013**, any disciplinary findings relating to the defendants for conduct similar to that alleged by Smith, i.e., findings that the defendants utilized excessive force or falsified disciplinary citations. If no such citations exist the defendants shall so certify. Armed

7

with this information the Court can determine: (1) whether this information is relevant to the issues raised in this case; (2) whether it is subject to any valid claim of privilege recognized by the Federal Rules; and (3) to what extent, in what format, and under what conditions it may be released to the plaintiff.

So ordered this 30th day of August 2013.

*<u>S/Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge