UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

AUG 2 2 2014

PER _____
DEPUTY CLERK

| | |
|---|---|
| I-KIEM SMITH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| LT. PRICE, et al., | : |
| | : |
| Defendants. | : |
| | : |

Civil Action No. 3:11-CV-1581

(Judge Kosik)

## MEMORANDUM

Before this court are Plaintiff's Objections to a Report and Recommendation ("R&R") issued by United States Magistrate Judge Martin C. Carlson. For the reasons which follow, the Court will adopt the R&R of the Magistrate Judge and will grant Defendants' Motion for Summary Judgment.

### I. PROCEDURAL HISTORY

Plaintiff brought this claim *pro se*, pursuant to 42 U.S.C. § 1983, on August 24, 2011 (Doc. 1), and filed an Amended Complaint (Doc. 48), on April 13, 2012. After Defendants' Motion to Dismiss (Doc. 59) was granted in part and denied in part, the following claims remain in the case: excessive force and retaliation claims against Lieutenant Price, Sargent Sheetz, and Correctional Officers Cramer, Harper, Kennedy, Harpster and Harrington, arising out of two incidents on February 17, 2011; retaliation claims against Officers Harper and Lear, arising out of misconducts that were issued on March 26, 2011 and August 20, 2011; and an Eighth

Amendment medical claim against the unnamed Physician Assistant.[1]

On September 24, 2013, Defendants filed a Motion for Summary Judgment (Doc. 97) and supporting documents. On October 15, 2013, Plaintiff filed a Motion in Opposition to Defendants' Motion for Summary Judgment (Doc. 104), a brief in support of his motion in opposition (Doc. 105), and Opposing Statement of Facts (Doc. 106). Plaintiff also submitted exhibits in support of his position (Docs. 107-09, 111-12.).

The Magistrate Judge filed an R&R on June 25, 2014 (Doc. 117), recommending that Defendants' Motion for Summary Judgment be granted. On July 31, 2014, Plaintiff filed Objections to the R&R (Doc. 120), and a brief in support of his objections (Doc. 121). Defendants filed a brief in opposition (Doc. 122), on August 13, 2014.

## II. FACTUAL BACKGROUND

### A. FEBRUARY 17, 2011 INCIDENT

Plaintiff's claim of excessive force stems from two incidents on February 17, 2011. Defendants, except for Lieutenant Lear, were all corrections officers working in the Restricted Housing Unit ("RHU") at SCI-Smithfield. (Doc. 99, Defs' SMF, ¶ 3.) On February 17, 2011, Plaintiff was exercising in one of the pens in the exercise yard, and Defendants decided to bring Plaintiff in last. (Id. at ¶ 6.) Before Plaintiff was removed from the exercise pen, Lieutenant Price and Plaintiff had a conversation, of which the subject is disputed. (Id. at ¶¶ 7-8; Doc. 106, Pl.'s Opp. SMF, ¶¶ 7-8.) Plaintiff alleges that Price threatened him and told him to stop filing grievances and encouraging other inmates to file grievances. (Doc. 106, Pl.'s Opp. SMF, ¶ 9.)

---

[1] The motion for summary judgment before us was filed on behalf of Defendants Price, Sheetz, Cramer, Harper, Kennedy, Harpster and Harrington.

Defendant Price claims that he talked to Plaintiff about his complaint of not receiving his boots at the cell door. (Doc. 99, Defs' SMF, ¶ 9.) During their conversation, Officers Harper, Harpster, Cramer, Sheetz, Harrington and Kennedy entered the exercise yard in the area behind Defendant Price. (Doc. 99, Defs' SMF, ¶ 9.) Defendants state, and Plaintiff does not properly dispute, that despite verbal orders and RHU rules, Plaintiff exited the cell facing the Defendants. (Id.) The RHU Handbook states that "prior to the opening of the cell door, the inmates will turn and face away from the door opening showing the officers the secure handcuffs. The door will be opened and the officers will assume an escort position/hold on the inmate. The officers will give the inmate verbal orders from that point on to back out of the cell onto the tier." (Id. at ¶ 11.) Defendants assert that this section applies to inmates exiting exercise pens. (Id. at ¶ 10.) Although Plaintiff offered video evidence that shows other inmates exiting an exercise pen backwards, Plaintiff disputes Defendants' assertion that the rule applies to exercise pens. (Doc. 106, Pl.'s Opp. SMF, ¶¶ 10-11; Doc. 112, Pl.'s Ex., Ex. C2, Entrance Video.)

In response to Plaintiff exiting the exercise pen facing the Defendants and not backwards, Defendants placed Plaintiff up against the wall and held him there for a short period of time. (Doc. 99, Defs' SMF, ¶ 13; Doc. 101, Defs' DVD Ex.) After Defendants regained control, they escorted Plaintiff to the KA-2 wing. (Id. at ¶ 16.)

Defendants assert, and Plaintiff disputes, that during the escort, Plaintiff tried removing the handcuff on his left wrist. (Id. at ¶ 17.) Defendants then put Plaintiff on the floor, secured him with handcuffs, and shackled him. (Id. at ¶ 19.) Plaintiff alleges that while on the floor, Defendants began to beat him. (Doc. 44-1, Pl.'s Amend. Compl., ¶ 12.) The Plaintiff alleges that Defendant Sheetz repeatedly rammed his face into the floor and Defendant Cramer

repeatedly jumped on his neck and left side of his face. (Id. at ¶ 13.) The video evidence does not show any of the Defendants beating or jumping on the Plaintiff. (Doc. 112, Pl.'s Ex., Exs. C3-5.) After Plaintiff was shackled, tethered and handcuffed, Defendants escorted him to KA-1 cell with some force, as his head was kept in a down position. (Id. at ¶ 24; Doc. 106, Pl.'s Opp. SMF, ¶ 24.)

Since Plaintiff was involved in a use of force, Department of Corrections ("DOC") policy dictated that he be assessed for any injuries by a member of the medical department. (Doc. 99, Defs' SMF, ¶ 25.) A. Lidwell, RN, declared that she performed an assessment of Plaintiff at his cell, shortly after the use of force. (Id. at ¶ 26; Doc. 100, Defs' App. to MSJ, Ex. L, Lidwell Decl., ¶ 4.) Plaintiff disputes the assertion that Lidwell performed an assessment; instead, Plaintiff asserts that Lidwell only took pictures of his hands and face through the cell door. (Doc. 106, Pl.'s Opp. SMF, ¶ 27; Doc. 107, Pl. Decl., ¶ 24.) Regardless, Lidwell saw dried blood on Plaintiff that appeared to have originated from his nose. (Doc. 99, Defs' SMF, ¶ 27.) Lidwell saw no other injuries. (Id. at ¶ 28.) Lidwell declared that she offered Plaintiff medical treatment twice, but he refused both times. (Doc. 100, Defs' App. to MSJ, Ex. L, Lidwell Decl., ¶ 11.) Plaintiff disputes that assertion and declared that he did not refuse medical treatment. (Doc. 107, Pl.'s Decl., ¶ 24.)

**B. SUBSEQUENT DISCIPLINARY HISTORY**

As a result of the February 17, 2011 incident, Defendants Cramer and Harper wrote misconduct reports against Plaintiff, citing Plaintiff for violating prison rules by resisting the officers. (Doc. 99, Defs' SMF, ¶¶ 30-35.) Following a disciplinary hearing, Smith was found guilty of the misconduct report written by Defendant Harper. (Id. at ¶ 35.)

4

One month later, Defendant Harper wrote another misconduct report against Plaintiff. (Id. at ¶ 37.) On March 16, 2011, when Harper was picking up morning trays, it is alleged that Plaintiff shoved a tray at Harper, as Harper opened the wicket, causing milk, cereal and syrup to spill on Harper's leg. (Id. at ¶ 36.) Plaintiff denies the occurrence of this event, but does not cite to any supporting evidence in his Opposing Statement of Facts. (Doc. 106, Pl.'s Opp. SMF, ¶ 36.) Plaintiff was found guilty and unsuccessfully appealed his finding of guilt to both the Program Review Committee and the Superintendent. (Doc. 99, Defs' SMF, ¶ ¶ 38, 45.) Plaintiff did not appeal to the third level of review, the Office of Chief Hearing Examiner. (Id. at ¶ 45.)

Five months later, Defendant Lear wrote a misconduct report against Plaintiff for refusal to obey an order. (Id. at ¶ 51.) On August 20, 2011, in an attempt to collect Plaintiff's meal tray, Lear ordered Plaintiff to the rear of his cell, but Plaintiff refused. (Id. at ¶¶ 49-50.) Plaintiff denies the occurrence of that event, but does not cite to any supporting evidence in his Opposing Statement of Facts. (Doc. 106, Pl.'s Opp. SMF, ¶¶ 49-51.) Plaintiff was found guilty and unsuccessfully appealed his finding of guilt to both the Program Review Committee and the Superintendent. (Doc. 99, Defs' SMF, ¶ 52-53.) Plaintiff did not appeal to the third level of review, the Office of Chief Hearing Examiner. (Id. at ¶ 53.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986); Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing Anderson, 477

U.S. at 248). A factual dispute is "material" if it might affect the outcome of the case.

Anderson, 477 U.S. at 248. In determining whether an issue of material fact exists, the court

must consider the evidence in the light most favorable to the non-moving party. Skerski v. Time

Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001); White v. Westinghouse Elec. Co., 862 F.2d

56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court

of the basis of its motion and identifying those portions of the record that it believes

demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986). When the non-moving party bears the burden of proof on a particular issue at

trial, the movant's initial burden can be met simply by "pointing out to the district court that

there is an absence of evidence to support the non-moving party's case." Id. at 325. After the

moving party has met its initial burden, "the adverse party's response . . . must set forth specific

facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). It then follows that

summary judgment is appropriate if the non-moving party fails to rebut by making a factual

showing "sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## IV. DISCUSSION

When objections are filed to a Report and Recommendation of a Magistrate Judge, we

must make a *de novo* determination of those portions of the report to which objections are made.

28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In

doing so, we may accept, reject, or modify, in whole or in part, the findings or recommendations

made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Local Rule 72.31. Although our review is *de novo*, we are permitted to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. See United States v. Raddatz, 447 U.S. 667, 676 (1980); see also Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

In the R&R, the Magistrate Judge found that Defendants were entitled to summary judgment because (1) Plaintiff failed to exhaust his administrative remedies as to the August and March Hearings, because Plaintiff did not appeal to the third and final level of review; (2) the video of the incident refutes Plaintiff's excessive force claim; (3) Plaintiff's retaliation claims fail because there was some evidence of guilt; and (4) Defendants are entitled to qualified immunity.

Plaintiff first objects to how the Magistrate Judge construed his "Motion in Opposition to Defendants Motion for Summary Judgment" (Doc. 104), since Plaintiff argues it should have been treated as a Cross Motion for Summary Judgment, not a response to Defendants' motion for summary judgment. Plaintiff also objects to how the Magistrate Judge viewed the facts and the characterization of the incident as an "exercise yard extraction incident." Lastly, Plaintiff objects to the Magistrate Judge's findings that Plaintiff's excessive force and retaliation claims fail, and that Defendants are entitled to qualified immunity.

Plaintiff first argues that his "Motion in Opposition to Defendants Motion for Summary Judgment" (Doc. 104), should have been treated as a cross motion for summary judgment. Plaintiff's Opposing Statement of Material Facts was filed in accordance with Local Rule 56.1, in that it either opposed, opposed in part, or did not oppose, Defendants' Statement of Material Facts. Therefore, in viewing the filings in support of Document 104, we find that the Magistrate Judge did not misconstrue Plaintiff's Document 104 as a response to Defendants' motion for

7

summary judgment.

Plaintiff next objects to the Magistrate Judge's characterization of the incident as an "exercise yard extraction incident." Plaintiff argues that characterizing the incident as an "extraction" unjustifiably puts Plaintiff as the cause of the use of force, by implying that he refused to leave the exercise yard. Furthermore, Plaintiff contends that Defendants do not assert it was an "extraction," since Defendants assert it was not a planned use of force. We find that although the Magistrate Judge termed the incident as an "exercise yard extraction incident," the use of this language by the Magistrate Judge did not put the cause of the use of force on the Plaintiff, before Plaintiff exited the exercise cell. Therefore, the Magistrate Judge's characterization of the incident was not prejudicial to Plaintiff.

Plaintiff next objects to the Magistrate Judge's view of the evidence. The Magistrate Judge concluded in the R&R that in "viewing the evidence in the light most favorable to [the inmate that], no reasonable finder of fact could view the video of the incident and determine that [defendants] acted maliciously and sadistically." (Doc. 117, R&R, at 26.) Plaintiff argues that the Magistrate Judge did not view the facts in the light most favorable to the Plaintiff, the non-moving party. Plaintiff asserts that genuine issues of material fact exist as to the need for Defendants to apply force, whether Plaintiff committed a prison handbook violation, and whether Plaintiff attempted or did slip his left hand out of the handcuffs, while being escorted by Defendants. Additionally, Plaintiff objects to the Magistrate Judge's finding that his excessive force claim fails and argues that his actions leading up to the incident did not give rise to the level of disturbance requiring force.

A factual dispute is "material" if it might affect the outcome of the case. Anderson v.

8

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a dispute of material fact exists, we look at what is required to make out a claim of excessive force.  The inquiry to determine whether one has an excessive force claim, is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  In making this determination, inferences can be drawn by evaluating a number of factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response."  Id. (citing Whitley, 475 U.S. at 321); see also Brooks v. Kyler, 204 F.3d 102, 102 (3d Cir. 2000).  De minimis uses of physical force do not qualify as excessive force unless the force is "repugnant to the conscience of mankind."  Brooks, 204 F.3d at 107 (citing Hudson v. McMillian, et al, 503 U.S. 1, 6 (1992)).  Not "every malevolent touch by a prison guard gives rise to a federal cause of action."  Hudson, 503 U.S. at 9.

The Magistrate Judge stated that although he viewed the evidence in the light most favorable to the Plaintiff, he relied on the videotape evidence, which refuted Plaintiff's assertion that Defendants used excessive force.  The Magistrate Judge found that there was nothing in the video of the incident that could be characterized as malicious or sadistic, the essential prerequisite to an Eighth Amendment violation.

In reviewing the record, including the video evidence, we find that the Magistrate Judge properly viewed the evidence in the light most favorable to the Plaintiff, the non-moving party.

9

After weighing the above factors and viewing the video evidence, we also agree with the

Magistrate Judge that no reasonable factfinder could conclude that the Defendants acted

maliciously and sadistically to cause harm.  The video evidence of the force used by Defendants

when Plaintiff exited the exercise pen was limited and involved Defendants putting Plaintiff

against the wall.[2]  No other force was used on Plaintiff at that time.  Additionally, the video

evidence of the force used while Defendants escorted Plaintiff to another unit shows that

Defendants did not act maliciously and sadistically to cause harm.  The video evidence does not

support Plaintiff's recitation of the amount of force used by Defendants.  Contrary to Plaintiff's

assertions, the video evidence does not show Defendant Sheetz repeatedly hitting Plaintiff's face

against the concrete floor or punching him, nor does it show Defendant Kramer repeatedly

jumping up and down on Plaintiff's neck and left side of his face.  Because we find no genuine

issues of material fact as to Defendants' conduct, we agree with the Magistrate Judge that

summary judgment is appropriate as to Plaintiff's excessive force claim.

The Magistrate Judge also found that Plaintiff's retaliation claims based on the filing of

misconducts, fail as a matter of law because Plaintiff was found guilty of misconducts on

February, March and August of 2011; Plaintiff did not fully exhaust his administrative grievances

with respect to the March and August 2011 disciplinary actions; and the disciplinary actions were

topically and temporally remote from one another and distinct from Plaintiff's constitutionally

protected conduct.  Plaintiff generally objects to the Magistrate Judge's findings.

---

[2] We note that the video evidence also supports Defendants' argument that RHU policy requires inmates to exit exercise pens backwards.  (Doc. 112, Ex. C2, Video of Walkway.)  Plaintiff exited the exercise pen facing forward, which caused Defendants to put Plaintiff up against the wall, opposite the pen.

The DOC policy, DC-ADM-801, sets forth the three-step appeal process that an inmate must follow to properly exhaust administrative remedies.  The record reflects that Plaintiff failed to appeal to the third and final step in the appeals process with respect to his March and August 2011 disciplinary actions.  Therefore, we agree with the Magistrate Judge that Plaintiff failed to exhaust his administrative remedies as to those actions, as required by the Prison Litigation Reform Act.

In considering Plaintiff's retaliation claim, we note that in the seminal Third Circuit case, Rauser v. Horn, the Third Circuit Court of Appeals set forth three requirements a prisoner-plaintiff must establish to state a prima facie claim of retaliation: (1) "the conduct which led to the alleged retaliation was constitutionally protected[;]" (2) "he suffered some 'adverse action' at the hands of the prison officials[;]" and (3) "his exercise of a constitutional right was a substantial or motivating factor in the challenged decision." Rauser, 241 F.3d 330 at 333-34 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 386, 399 (6th Cir. 1999) (en banc); Allah, 229 F.3d at 225).  If the plaintiff states a prima facie case, the burden then shifts to the defendants to prove that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

The Magistrate Judge found that Defendants would have made the same decision as to the misconducts, even absent of any protected conduct, since Plaintiff was found guilty of the February, March and August 2011 misconducts.  Thus, as the Magistrate Judge noted, "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings." Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010) (citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994)).  We find that Defendants met their burden and showed that "they

11

would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." We also note that the Third Circuit Court of Appeals in Carter v. McGrady, looked at whether there was a "sizeable quantum" of evidence of the misconduct, and whether the prisoner's offenses "were so clear and overt." Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002). After viewing the video evidence with respect to Plaintiff's properly exhausted claim pertaining to the February 2011 misconduct, we find that there was a "sizeable quantum" of evidence of the misconduct. Therefore, we agree with the Magistrate Judge that summary judgment is appropriate as to Plaintiff's retaliation claims.

Lastly, the Magistrate Judge found that even if Plaintiff had established colorable constitutional claims, Defendants would be entitled to qualified immunity from those claims for damages. Plaintiff generally objects to this finding and argues that the DOC put Defendants on notice by DC-ADM 201, which outlines the policy on the use of force.

Qualified immunity protects "government officials performing discretionary functions, including police officers, 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether a government official is entitled to qualified immunity, the court undergoes a two-step inquiry and uses its discretion as to what order the two steps are considered. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). The two steps are: (1) whether the facts shown by the plaintiff demonstrate that the government official's conduct violated a constitutional right; and (2) whether the right was "clearly established" at the time of the alleged misconduct. Pearson, 555 U.S. at 815-16. "The relevant, dispositive inquiry in

12

determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

In this case, we found that the evidence did not demonstrate that Defendants violated Plaintiff's constitutional rights as to his claims of excessive force and retaliation. Therefore, we agree with the Magistrate Judge that Defendants are entitled to qualified immunity from damages in this case.[3]

## V. CONCLUSION

For the reasons set forth above, we will adopt the Magistrate Judge's recommendation and we will grant Defendants' motion for summary judgment.[4] An appropriate order is attached.

---

[3] The Magistrate Judge addressed the defense of qualified immunity *sua sponte* because Defendants raised it as a defense to Plaintiff's complaint, even though they did not separately argue for it in their motion for summary judgment.

[4] A claim for deliberate indifference to a serious medical need still remains against the John Doe Physician's Assistant. This action was filed on August 24, 2011, and a waiver of service was returned unexecuted as to John Doe, on October 7, 2011 (Doc. 10). A Case Management Order was issued on January 11, 2013 (Doc. 64), setting the discovery deadline of June 24, 2013. Despite the opportunity to conduct discovery, Plaintiff has not identified the physician assistant. Federal Rule of Civil Procedure 4(m) allows the Plaintiff 120 days after the complaint is filed, to serve the defendant. Although we recognize that the time for service must be extended if the plaintiff shows good cause, we find that no good cause can be shown in this case, as this action was initiated three years ago and discovery has been closed for fourteen months.