**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **I-KIEM SMITH,** | : | **Civil No. 3:11-CV-1581** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **( Judge Kosik)** |
| | : | |
| **LT. PRICE, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of The Case

#### A.    Procedural History

In this case we called upon, once again, to assess the legal sufficiency of the plaintiff's claims that he was subjected to excessive force by prison staff while Smith was an inmate in state custody.  On this occasion, however, Smith has completely failed for a span of months to respond in any fashion to the defendants' summary judgment motion, which challenges his claims on qualified immunity grounds.  Given this history of neglect to this litigation by Smith, for the reasons set forth below, it is recommended that this complaint now be dismissed.

This is a *pro se* civil rights case that was first brought by a state prisoner, I-Kiem Smith, through the filing of a civil rights complaint on August 24, 2011, (Doc.

1.), a complaint which Smith subsequently amended on April 13, 2012.  (Doc. 48.)

At the time that he filed this lawsuit,[1] I-Kiem Smith was a state prisoner, whose prior

criminal history had been marked by episodes of violence directed at corrections staff.

Thus, Smith had served sentences for two separate attacks on corrections officers, one

involving an assault on a corrections officer and the other involving spitting on a

corrections officer.  (Doc. 99, ¶ 1, Exhibit, R, Deposition, p. 11, l. 24-25, p. 12 l. 1-

25.)  Smith was also a long-term resident in the Restricted Housing Unit (RHU) at

SCI Smithfield, having been housed continuously in the RHU since June 20, 2010.

(Id., ¶2, Exhibit, R, Deposition, p. 15 l. 10-11.)

In the instant case, Smith alleged that prison officials violated his Eighth

Amendment right to be free from cruel and unusual punishment by employing

excessive force against him on two occasions during a February 17, 2011, inmate

extraction and movement at the State Correctional Institution (SCI) Smithfield.

Smith also alleged that he was subjected to retaliatory disciplinary actions following

this February 2011 affray at the prison.

---

[1]On May 26, 2015, Smith informed the Court that he had been released from custody and was living in Philadelphia.  (Doc. 128.)  On June 9, 2015, Smith wrote again to the Court inquiring about the status of the case and another lawsuit which he had filed while in prison.  (Doc. 132.)  Since June 2015, Smith has not communicated with the Court in any fashion, responded to defense motions or complied with orders filed by the Court and addressed to the plaintiff.

The defendants moved for summary judgment on all of these claims in September 2013, (Doc. 97.), and we issued a Report and Recommendation recommending that this summary judgment motion be granted. (Doc. 117.) The district court adopted this Report and Recommendation in August 2014, (Doc. 124.), and Smith appealed. (Doc. 125.)

In June of 2015, the court of appeals entered an opinion and order which affirmed the dismissal of the first of Smith's two excessive force claims, as well as affirming the dismissal of Smith's prison disciplinary retaliation claims. (Doc. 129-1.) As to a second excessive force claim made by Smith, however, the appellate court held that there was a sufficient lack of clarity to the prison video relating to this incident to create a factual dispute, and remanded the case for further proceedings. In particular, the court of appeals noted that:

> As to the second incident, . . ., the evidence is not so clear. The defendants contend they forced Smith to the ground because he removed or attempted to remove his left handcuff. Smith disputes these assertions and contends that the defendants forced him to the ground without a valid justification and to cause harm. The video evidence does not resolve this key question. It does not show Smith remove or attempt to remove his left handcuff; indeed, it does not show Smith's left hand or arm free at any point. All the video shows on this point is that Smith's left arm moves slightly upward immediately before the guards forced him to the ground, but it is not clear whether the guard holding Smith's left arm or Smith caused this motion.

After Smith is forced to the ground, the incident becomes even less clear. Smith's body is covered with guards, and rapid movements make it difficult to discern exactly what occurred. Further, at several points the view is blocked by guards standing or walking around Smith. Smith contends the guards exacted gratuitous violence during this struggle, including hitting his face into the floor, punching him, rubbing his face in blood, jumping on him, putting extreme pressure on his neck, and generally beating his body. The defendants deny these assertions and contend that the video evidence blatantly contradicts them.

Reviewed carefully, the videos show one guard forcefully press Smith's face on the ground at least twice. The videos also show upper body movement by other guards, though that movement is largely obscured. At one point, a guard places a jacket on the ground near Smith's face. After Smith is escorted out, this jacket remains and appears blood stained. Smith's neck is not visible in the videos of the encounter, as moving guards cover his upper body throughout the video's duration. Given how little can be ascertained from the video, it cannot be said that the record "blatantly contradict[s]" Smith's allegations that the guards placed repeated, excessive pressure on his neck and rubbed his face in blood.

Smith v. Price, 610 F. App'x 113, 116-17 (3d Cir. 2015).

Upon remand this matter was referred to the undersigned, and the defendants filed a renewed motion for summary judgement on August 19, 2015. (Docs. 135-37.) That summary judgment motion provided significant additional, and entirely undisputed, factual context to this episode. These undisputed facts, as captured on prison surveillance cameras, reveal that this entire encounter transpired in approximately 2 ½ minutes and only during 40 seconds were the correctional staff actively engaged in a physical struggle with Smith. Moreover, in the exhibits

appended to this summary judgment motion it appears that at least four defendants had little or no contact with Smith's head and face, the only part of Smith's body that was depicted being subjected to force on the prison video. Furthermore, the uncontradicted declarations of the correctional staff revealed a compelling reason for the application of some measured force to Smith's head: according to the defendants the plaintiff was endeavoring to bite correctional staff, conduct which presented a risk of harm that required immobilizing Smith's head while officers regained physical control over this inmate. (Id.)

Presented with this additional, detailed evidence, Smith made no effort to respond to the renewed summary judgment motion. After six weeks passed without any effort by Smith to contest this summary judgment motion, on October 2, 2015, we entered an order directing Smith to respond to the motion on or before October 23, 2015. (Doc. 140.)

We also warned Smith in clear and precise terms of the consequences which would flow from a failure to respond to this motion, stating that:

> The plaintiff, who is proceeding *pro se*, is also advised that Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions, and provides that:
>
>> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if

> a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

> It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v.Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). Therefore, a failure to comply with this direction may result in the motion being deemed unopposed and granted.

(Id.)

Despite this explicit warning from the Court, Smith has never responded to this summary judgment motion, or contested the assertion that the force used to restrain his head was necessary given Smith's efforts to bite staff. Indeed, five months have now passed without the slightest effort by Smith to respond to this motion, or litigate this case. On these facts, the summary judgment motion should now be deemed ripe, and unopposed, and should be granted by this Court.

## II.   Discussion

### A.   Under The Rules of This Court This Summary Judgment Motion Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the plaintiff is deemed to concur in this summary judgment motion, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with

the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc</u>., No. 09-1704,  2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010).   In this case the plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion.   Therefore, these procedural defaults by the plaintiff compel the Court to consider:

> [A] basic truth:  we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice.  *See* Fed.R.Civ.P. 1.  Often that will mean that courts should strive to resolve cases on their merits whenever possible.  However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.   A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice:  'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." <u>Id.</u>  Therefore, we are obliged to ensure that

one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.   In this case, the plaintiff has repeatedly failed to comply with Local Rule 7.6 by filing a timely response to the summary judgment motion.   These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this summary judgment motion.

**B.**      **Dismissal of this Case Is Also Warranted Under Rule 41**

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that:  "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).   That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the district court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors:   (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.  Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)).  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus,  538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently

sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly

irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . .   However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988).   It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.   In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge.   Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

The third Poulis factor-the history of dilatoriness on the plaintiff's part–also suggests that dismissal of this action is now appropriate.   In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court

orders.' <u>Adams</u>, 29 F.3d at 874." <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted).  Here, the plaintiff has allegedly failed for the past six months  to respond to a defense summary judgment motion.  The plaintiff has also failed to timely file pleadings, and has not complied with orders of the Court.  Thus, the plaintiff's conduct has begun to display "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." <u>Adams</u>, 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994).  At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While _Poulis_ also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing _Poulis_ agree that in a situation such as this case, where we are confronted by a _pro se_ litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a _pro se_ litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under _Poulis_ we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's case, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that

" 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>, 538 F.3d at 263.   Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, many of the plaintiff's claims appear to fail on their merits, yet another factor which favors dismissal of this action.   The legal flaws inherent in these claims are discussed separately below.

## C.   Many of the Plaintiff's Claims Fail on Their Merits

Smith's Eighth Amendment claims are judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction, and are governed by the same overarching and animating constitutional benchmarks.   As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment."   However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." <u>Whitley v. Albers</u>, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).   "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Id</u>. (citation and internal quotations omitted).   "It is obduracy and wantonness, not inadvertence

or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

Resolution of an Eighth Amendment claim, therefore, "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

Therefore, an Eighth Amendment excessive force claim like those made by Smith entails a showing of some subjective intent to injure. In an excessive force case, where "prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Thus, the keystone to analysis of an Eighth Amendment excessive force claim often focuses upon issues

of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

However, the issue of whether excessive force was used is one which, in proper circumstances, can be determined as a matter of law.  In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain."  Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 322).  There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including:  "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'"  Id. at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Graham v. Connor, 490 U.S. 386, 396-7 (1989).  Moreover, in the context of prison excessive force claims, in determining **"**whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," Hudson v. McMillian, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'"  Fuentes v. Wagner, 206 F.3d 335, 346 (3d Cir. 2000).

Yet another legal concept, the qualified immunity doctrine, applies to these Eighth Amendment claims, and narrows the circumstances in which correctional staff may be found individually liable for damages.  Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit."  Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries.  First, the court must evaluate whether the defendant violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor.  Saucier, 533 U.S. at 201.  If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted.  Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02.  The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would

understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  <u>Id.</u>  Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  <u>Gruenke v. Seip</u>,

225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In the specific factual context of excessive force claims courts have acknowledged that, in certain instances, summary judgment is entirely appropriate. Gilles v. Davis, 427 F.3d. 197, 207 (3d Cir. 2005).  With respect to these particular excessive force claims, courts agree that:  "In these cases, summary judgment for an officer who claims qualified immunity is appropriate where, 'after resolving all factual disputes in favor of the plaintiff,[ ] the officer's use of force was objectively reasonable under the circumstances.' "  Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005).  Moreover, the particular factual context in which an excessive force claim arises must be carefully scrutinized for purposes of determining whether defendants are entitled to qualified immunity since the Supreme Court has expressly cautioned

that "qualified immunity protects actions in the ' "hazy border between excessive and

acceptable force." ' <u>Brosseau, supra</u>, at 201, 125 S.Ct. 596 (<u>quoting Saucier</u>, 533

U.S., at 206, 121 S.Ct. 2151; some internal quotation marks omitted)." <u>Mullenix v.</u>

<u>Luna</u>, 136 S. Ct. 305, 312, 193 L. Ed. 2d 255 (2015).  As the Court observed:

> A clearly established right is one that is "sufficiently clear that every
> reasonable official would have understood that what he is doing violates
> that right." <u>Reichle v. Howards</u>, 566 U.S. ——, ——, 132 S.Ct. 2088,
> 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and alteration
> omitted).  "We do not require a case directly on point, but existing
> precedent must have placed the statutory or constitutional question
> beyond debate." <u>Ashcroft v. al–Kidd</u>, 563 U.S. 731, 741, 131 S.Ct.
> 2074, 179 L.Ed.2d 1149 (2011).  Put simply, qualified immunity
> protects "all but the plainly incompetent or those who knowingly violate
> the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 89
> L.Ed.2d 271 (1986).  "We have repeatedly told courts ... not to define
> clearly established law at a high level of generality." <u>al–Kidd, supra</u>, at
> 742, 131 S.Ct. 2074.  The dispositive question is "whether the violative
> nature of particular conduct is clearly established." <u>Ibid.</u> (emphasis
> added).  This inquiry " 'must be undertaken in light of the specific
> context of the case, not as a broad general proposition.' " <u>Brosseau v.</u>
> <u>Haugen</u>, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per
> curiam ) (<u>quoting Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151,
> 150 L.Ed.2d 272 (2001)).

<u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015).

Applying these exacting legal tenets in terms of the factual fit required to define the

law as clearly established in the field of excessive force claims, which inevitably play

out against fast-moving and often murky factual backdrops, courts have frequently

relied upon <u>Mullenix</u> to hold that officers are entitled to qualified immunity in such cases. <u>Compare Rush v. City of Lansing</u>, No. 15-1225, 2016 WL 787891, at *10 (6th Cir. Feb. 29, 2016)(granting summary judgment); <u>Swift v. McNatt</u>, No. 15-1009, 2015 WL 9165967, at *4 (W.D. Tenn. Dec. 16, 2015)(same) <u>with  Pauly v. White</u>, No. 14-2035, 2016 WL 502830, at *11 (10th Cir. Feb. 9, 2016).

Guided by these benchmarks, and given the uncontradicted evidence submitted by the defendants, we conclude that the defendants are entitled to summary judgment in this case on Smith's Eighth Amendment excessive force claims on qualified immunity grounds.  At the outset, we note that it is entirely undisputed that a number of the defendants had little or no physical contact with Smith during this brief incident, whose entire duration was little more than two minutes, only 40 seconds of which involved an actual physical struggle between Smith and prison staff.  For example, Lieutenant Price had no physical contact with Smith, and Officers Kennedy, Harper and Herrington simply restrained Smith's limbs while other officers secured the prisoner.  They did not apply force to Smith's head or neck, the gravamen of his remaining excessive force claim, and cannot be held accountable for that brief application of force by others which took place during a 40 second melee.

While three officers, defendants Harpster, Cramer and Sheetz, acknowledge restraining Smith's head during this brief struggle, these witnesses also provide

uncontradicted statements which place these actions in a clearer and more legally compelling factual context.   Specifically, the correctional staff involved in this incident consistently report that Smith was attempting to bite them as they restrained this inmate.   This context is crucially important to any qualified immunity analysis in this case, since it places the efforts at restraining Smith's head in a setting where Smith was threatening injury to staff by trying to bite them.   Recognizing that "qualified immunity protects actions in the ' "hazy border between excessive and acceptable force," ' Brosseau, supra, at 201, 125 S.Ct. 596 (quoting Saucier, 533 U.S., at 206, 121 S.Ct. 2151; some internal quotation marks omitted)," Mullenix v. Luna, 136 S. Ct. 305, 312, 193 L. Ed. 2d 255 (2015), we find that the defendants are entitled to qualified immunity in this case, since they were entitled to take prudent steps to avoid being bitten by this inmate and nothing about the uncontested evidence concerning the efforts they made to restrain Smith so he could not bite them could have alerted these officials that their actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).

In sum, then, this merits analysis reveals that many of Smith's claims may fail as a matter of law on qualified immunity grounds.   Therefore, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in a profound way, we recognize that in civil cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable cause of action, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment, (Doc. 135.) be GRANTED, and the plaintiff's complaint be dismissed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen

(14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of March 2016.

                                    _**S/Martin C. Carlson**_
                                    Martin C. Carlson
                                    United States Magistrate Judge